301 Ga. 819
FINAL COPY

S17A0895. BREWER v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Erwin Trevor Brewer appeals his conviction for the murder of Larry Strickland and related crimes, contending that the trial court erred by denying a motion for mistrial and that he received ineffective assistance of counsel.[1] For the reasons set forth below, we affirm.

1. In the light most favorable to the verdict, the record shows that, on

---

[1] In February 2014, Brewer was indicted in Troup County for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a crime. Following a jury trial, a jury found Brewer guilty on all counts. On February 20, 2015, the trial court sentenced Brewer as a recidivist to life imprisonment without the possibility of parole for malice murder and five consecutive years for possession of a firearm. Although the trial court purported to merge the conviction for felony murder into the malice murder conviction, it was actually vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993). The remaining charge of aggravated assault was properly merged for purposes of sentencing. On February 26, 2015, Brewer filed a motion for new trial, which, after the entry of new counsel, was amended on November 9, 2015. The motion for new trial was denied by the trial court on January 27, 2016, and Brewer filed a timely notice of appeal. The resulting appeal was docketed to the April 2017 term of this Court and submitted for decision on the briefs.

December 11, 2013, Brewer borrowed $100 from Jessica Gates with the promise that he would repay the money on the following day. On December 12, 2013, Brewer borrowed $100 from Strickland, his cousin, in order to repay Gates. Brewer also promised Strickland that he would repay the debt on the following day. On December 13, 2013, Brewer was socializing at the home of Stefanie James and Jovan Edmondson with James, Edmondson, Thomas Person, and Robert Hatcher. That afternoon, Strickland arrived at the residence. At one point, Strickland asked Brewer about the money that he had loaned to him. Brewer became angry and started arguing with Strickland. Edmondson intervened, separating the two. Strickland walked outside. Brewer then grabbed Edmondson's handgun that was sitting on a nearby table and pursued Strickland in a rage. Person was also outside at that time, and he witnessed Brewer confront and shoot Strickland, fatally wounding him. Hearing the gunshots, James, Edmondson, and Hatcher ran outside to find Brewer standing over Strickland with a gun in his hand. Brewer then cursed at and disparaged Strickland, reached into Strickland's pocket, and stole money. Brewer then fled in Person's car. Ten days later, Brewer was found by police and arrested. Brewer testified at trial that, in his initial confrontation with Strickland, he felt a gun hidden beneath

2

Strickland's shirt, and he shot Strickland in self-defense. The witnesses to the shooting, however, testified that Strickland was unarmed.

This evidence was sufficient to enable the jury to find Brewer guilty of the crimes for which he was convicted beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Brewer contends that the trial court erred by denying his motion for mistrial after testimony from a State witness allegedly placed his character into evidence. We disagree.

The record shows that, prior to trial, the trial court prohibited the State from eliciting testimony regarding the reason Brewer needed the $100 loan, namely to pay for bond associated with an unrelated misdemeanor charge. During trial, the State asked Officer Roy Ham if he was involved in the search for Brewer after Strickland's murder. Officer Ham testified that he was involved in the search and that he had been contacted by others who "wanted to know if we could possibly utilize in-house records and jail booking information to locate" Brewer. At that point, Brewer made a motion for mistrial, arguing that the testimony regarding "booking information" had placed Brewer's character in evidence. The trial court denied the motion for a mistrial, but offered to give

3

a curative instruction. Trial counsel, however, declined the curative instruction.

As a general rule,

[a] trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

(Citation and punctuation omitted.) Rucker v. State, 293 Ga. 116, 118 (2) (744 SE2d 36) (2013). Furthermore, "[w]e have held that curative instructions are an adequate remedy when a witness inadvertently refers to a defendant's prior convictions or criminal acts. [Cit.]" Bunnell v. State, 292 Ga. 253, 257 (4) (735 SE2d 281) (2013). Given that Brewer declined the court's offer to give a curative instruction with regard to the statement, he cannot now complain about its refusal to declare a mistrial. Pickren v. State, 272 Ga. 421, 426 (9) (530 SE2d 464) (2000). Accordingly, Brewer has waived his right to complain about the trial court's decision. Id. Even if this right had been preserved, the trial court did not abuse its discretion in denying the motion for a mistrial. Walker v. State, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007).

3. Brewer contends that trial counsel rendered ineffective assistance by declining the trial court's offer to give a curative instruction regarding Officer

4

Ham's mention of booking information.

> In order to succeed on his claim of ineffective assistance, [Brewer] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Furthermore, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) McNair v. State, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014).

As discussed in the preceding division, the trial court acted within its broad discretion in denying Brewer's motion for a mistrial. In addition, Brewer's trial counsel testified at the hearing on the motion for new trial that he declined the trial court's curative instruction because it "would bring [the booking reference] to the forefront of the jury's mind, and it may have been that

5

it got by without the jury even hearing it." Trial counsel believed that, "without the curative instruction that maybe [the jury] wouldn't remember [the jail reference], and it wouldn't be fresh on their memory." This strategic decision not to draw the jury's attention to the booking reference by declining a curative instruction was "within the wide latitude of presumptively reasonable professional conduct engaged in by trial attorneys." Kitchens v. State, 289 Ga. 242, 245 (2) (e) (710 SE2d 551) (2011). There was no ineffective assistance.

4. Brewer contends that the trial court committed reversible error by disallowing evidence that Strickland, the victim, had committed an alleged previous act of violence five years before his murder. We disagree.

The record shows Brewer chose to take the stand in his own defense, and, shortly into his testimony, he began to allege that Strickland had previously arranged for unnamed associates to murder an unnamed victim at some point approximately five years before Brewer shot and killed Strickland. No specifics of the crime were given. Brewer wished to use this evidence to support his claim of self-defense. The State objected to this testimony, and the trial court sustained the objection. Pretermitting the question of whether the trial court erred by excluding Brewer's testimony on this issue, Brewer has failed to show harm

6

under the facts of this case. Here, multiple witnesses testified that Brewer initially attacked Strickland and that Strickland did not have a weapon. In addition, one of those witnesses actually saw Brewer shoot Strickland and testified as to the circumstances in which the murder occurred. This evidence was overwhelming. "Considering the trial record as a whole, we conclude that it is highly probable that any erroneous evidentiary ruling by the trial court with regard to [the alleged unrelated criminal activity by Strickland] did not contribute to the jury's verdict." (Citations omitted.) Smith v. State, 299 Ga. 424, 432-433 (2) (d) (788 SE2d 433) (2016) (explaining that OCGA § 24-1-103 (a) of the new Evidence Code continues the preexisting harmless error doctrine in Georgia).

Judgment affirmed. All the Justices concur.

Decided August 28, 2017.

Murder. Troup Superior Court. Before Judge Simpson.

Deborah L. Leslie, for appellant.

Peter J. Skandalakis, District Attorney, Melissa L. Himes, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.